LAND, J.
Plaintiff sued to recover the sum of $140.24 damages by fire and water on 33 bales of cotton when delivered by defendant company to plaintiff, as consignee, under bills of lading, attached to the petition. The plaintiff did not allege that the damage was occasioned by negiigéneé on *9 the part of the carrier, and the cause of action set forth was therefore the failure of the defendant company to deliver the cotton in good condition.
Defendant filed an exception of no cause of action, predicated on the absence of allegations of negligence.
This exception was tried and overruled, and thereupon the defendant answered, and the cause was tried on the merits.
The district judge rendered judgment in favor of the defendant, and on appeal the judgment was affirmed by the Court of Appeal, one of the judges dissenting. The cause was brought before this court by writ of review. The district judge found that there was no negligence on the part of the defendant.
We make the following excerpt from his opinion, to wit:
“The presumptive negligence on the part of the defendant has been destroyed by the positive evidence given by it that ordinary care and attention usually given by diligent men on like occasions were exercised by it on this occasion. The cotton was placed in the usual safe place for freight; it was covered by tarpaulins, and a watchman was placed in charge of it.”
“The cotton could not have been ignited by sparks from passing locomotives belonging to defendant, for none passed the cotton except those which were equipped with spark arresters ; and no one except employes of plaintiff and defendant were near, or had been near, the cotton when the fire occurred.”
The case is thus stated by the Court of Appeal:
“The plaintiff claims damages for certain cotton destroyed by fire, which was transported hither from Shreveport by the defendant, and which was in course of delivery when the accident occurred.
“It is conceded that the amount claimed correctly represented the loss, but liability is denied on the ground that the railroad company used due diligence in protecting the cotton, and is therefore not responsible for loss. * * * The question now tendered is whether the carrier must show, under the jurisprudence, exactly how the damage occurred, and specifically trace it to some particular accident or uncontrollable event, or whether he is exonerated by proof of due diligence on his part.”
After reviewing the jurisprudence of this state, the Court of Appeal held that a carrier is not an insurer' as at common law, but his responsibility must be considered as that of a bailee for hire, answerable for ordinary neglect.
The court cited Hunt v. Morris, 6 Mart. (O. S.) 676, 12 Am. Dec. 489, and Maxwell & Putnam v. R. R. Co., 48 La. Ann. 385, 19 South. 287, as supporting its ruling, and the latter as, in effect, overruling Brousseau v. Ship Hudson, 11 La. Ann. 428. Moore, J., dissented, holding that the responsibility of the common carrier for loss or damage of the thing intrusted to him is the same under the civil law as it is at common law.
Article 2754 of the Revised Civil Code of 1870 reads as follows:
“Carriers and watermen are liable for loss or damage of the things intrusted to their care, unless they can prove that such loss or damage has been occasioned by accidental and uncontrollable' events.”
Article 2725 of the Civil Code of 1S25 reads “may be liable,” and it appears that the words “accidental or uncontrollable events,” were used as the equivalents of “cas fortuit ou force majeure” of the French text of the same article.
The Civil Code of 1808, p. 3S4, article 63, reads “accidental or uncontrollable events,” while the Codes of 1825 and 1870 read “accidental and uncontrollable events.”
The “cas fortuit,” or “fortuitous event,” as defined by the Code of 1825, is that which happens by a cause or force which we cannot resist; and “force majeure,’.’ or “superior force,” is an accident which human prudence can neither foresee nor prevent.
The ease of Hunt v. Morris, 6 Mart. (O. S.) 676, 12 Am. Dec. 489, was decided in 1819, under the Code of 1808. In that case a steamboat was destroyed by fire while under way, and the evidence showed that no negligence could be attributed to those who were concerned in the navigation of the boat. The court said, speaking of carriers-
*10 “They are excused by accident or overpowering force — cas fortuit on force majeure — wherever the first does not occur by their negligence, and they do not unnecessarily go in the way of the latter;” and that in case of accidents “the carrier is bound to show that they happened without any fault or negligence on his part, which, being a negative proposition, can only be established by evidence of the ordinary care and attention usually given' by diligent men on like occasions.”
In Brousseau & Co. v. Ship Hudson, 11 La. Ann. 427, decided in 1856, goods shipped at New York for New Orleans were damaged in transit by the bursting of four casks of chloride of lime in the hold of the vessel. The court held that the defendant was responsible for the loss, though not chargeable with negligence, and said:
“Under our Code common carriers are liable for the loss or damage of the things intrusted to their care, unless it be shown by them, that such loss or damage was occasioned by accidental and uncontrollable events. (Par cas fortuit, ou force majeure.) Article 2725; I. R. R. 410. The term ‘vis major’ (superior force) is used in the civil law in the same way that the words ‘act of God’ are used in the common law, and so also is the term ‘casus fortuitus.’
“By the act of God is meant inevitable accident or casualty.”
The court quoted the following extract from Story on Bailments, to wit:
“By ‘inevitable accident’ is meant any accident produced by any physical cause which is irresistible, such as loss by lightning or storms, by perils of the seas, by an inundation or earthquake, or by sudden death or illness. By ‘irresistible force’ is meant such an interposition of human agency as is, from its nature and power, absolutely uncontrollable.”
The court further said:
“Hemp taking fire in a state of effervescence may be mentioned as an instance of loss which is not attributable to a cas fortuit.”
This case was cited with approval in Cranwell v. Ship F. Fosdick, 15 La. Ann. 437, 77 Am. Dec. 190, and in Pitre v. Offutt, 21 La. Ann. 679, 99 Am. Dec. 749, which, however, did not involve the same issue.
In article 1927 (article 1933 of the Oode of 1870) it is provided that the debtor will be excused from delivering the object of the contract if it be lost “by some fortuitous event or irresistible force” — “par quelque cas fortuit ou de force majeure” in the French Oode of 1825.
In Engster & Co. v. West & Co., 35 La. Ann. 121, 48 Am. Rep. 232, the court said:
“The pandectes Francaises teach that ‘on en-tend par cas fortuit les accidens qu’on n’a pu ni prévoir ni empeeher.’ So Emerigon on Insurance, 285, by ‘accident’ (cas fortuit) is' meant a superior force which cannot be foreseen nor resisted. In its legal sense, ‘fortuitous event’ is synonymous with ‘act of God’ of the common law.”
In the case of Darrall v. Southern Pacific Company, 47 La. Ann. 1455, 17 South. 884, the defendant used barges to convey sugar from plantations to its railroad, and one of these barges laden with sugar sank by coming in collision with piles or fenders placed by defendant in Berwick’s Bay to protect its railroad bridge. Plaintiff sought to make the company liable for the. value of his sugar lost by reason of the sinking of the barge. The court rendered judgment in favor of the plaintiff on account of defendant’s want of due care in the location and construction of the protection for its bridge. In the opinion it is stated arguendo “that our Code does not impose on carriers the responsibility incident to the relation under the common law.” Rev. Civ. Code 1870, arts. 2751, 2754. The case went off, however, on a question of negligence not involving a fortuitous event.
The decision of the district court and its affirmance by the Court of Appeal were based on Maxwell & Putnam v. Southern Pacific Railroad Company, 48 La. Ann. 385, 19 South. 287. In that ease 110 bales of cotton were destroyed by fire while in possession of defendant at its depot awaiting transportation, and it was alleged that the loss happened through the fault, negligence, carelessness, and unlawful acts of defendant. One of the stipulations of the bills of lading was that the carrier should not be responsible for loss or damage caused by fire not due to the company’s negligence. The court recognized the validity of such a *11 limitation of liability by contract, but decided tbe case against the defendant on the ground that the loss was occasioned through the fault or ordinary negligence of the servants of the company.
In that case the organ of the court cited Hunt v. Morris, 6 Mart. (O. S.) 676, where the loss was charged to the “negligence and misconduct of the master and those employed under him”; also the Darrall Oase, 47 La. Ann. 1455, 17 South. 884, and a number of common-law authorities. But no reference was made to Brousseau v. Ship Hudson, 11 La. Ann. 427, nor was the question of the liability of the company under Civ. Code, art. 2754, discussed.
The only two cases which really passed on the question before us are the Brousseau Case, decided under the Code of 1825, and the case of Hunt v. Morris, decided under the Code of 1808.
We have already noticed the difference between the provisions of the two Codes relative to the liability of carriers. Tbe Code of 1808 excused the carrier on proof that the loss or damage was occasioned by “accidental or uncontrollable events.” In the Code of 1825 “and” was substituted for “or,” so as to read “accidental and uncontrollable events.”
Article 2722 of the Code of 1825 provided that carriers should be subject, “with respect to the safe-keeping and preservation of things intrusted to them,” to the same duties and obligations of innkeepers, who were made responsible for the effects of travelers damaged or stolen, except when stolen by force and arms, or with exterior breaking open of doors, or by any other extraordinary violence. Having thus provided for loss or damage that might be occasioned by violence or human agency, the authors of the Code further provided that carriers should be liable for loss or damage of the things intrusted to them care unless they can prove that such loss or damage has been occasioned by “accidental and uncontrollable events.” The French text reads, “Par cas fortuit ou force majeure.” In the Code of 1825 “cas fortuit” is translated “fortuitous event,” and “force majeure” is the equivalent of “irresistible force.” Article 1927. Both terms indicate events caused by a force which cannot be resisted. Article 3522, Nos. 7 and 19. The word “accident” per se means an unforeseen and unexpected event, and the word “uncontrollable” further qualifies the event as one which cannot be restrained or prevented. Article 2725 of the Code of 1825 corresponds with article 1784 of the Code Napoleon. Under the latter article it is held uniformly in France that destruction by fire (incendie) is not in itself a fortuitous event (cas fortuit). Laurent, Droit Civil Francais, Tome 25, No. 523. The court of cassation in such cases has formulated the following principles:
“II ne suffit pas au voiturier, pour dégager sa responsabilité, d’établir que la marchandise h lui confiée a peri; il doit prouver encore qu’elle a peri par un cas purement fortuit, impossible ü. prévenir, et qu’il n’a a, se reproclier aucun fait d’imprudence ou de négligence.” Laurent, Id.
The above quotation may be freely translated as follows:
“The carrier cannot escape liability by merely proving that the merchandise intrusted to him has been lost or destroyed, but he must prove further that it has been lost or destroyed by an event purely accidental, impossible to prevent, and that he is not chargeable with any act of imprudence or of negligence.”
The carrier must prove the precise cause of the loss. It will not suffice to prove merely due diligence, but the carrier must prove, moreover, that the accident was occasioned by a fortuitous event, or by irresistible force, or by a defect of the thing itself, or by a fault of the shipper. FuzierHerman, Code Civil, vol. 4, p. 419, No. 1.
We are of opinion that the term “accidental and uncontrollable events,” as used in article 2754 of our present Civil Code, is the equivalent of “cas fortuit ou force majeure” of the French text of article 2725 of *12 the Code of 1825. In the civil law loss by fire is not considered a fortuitous event, as it' arises almost invariably from some act of man. At common law the carrier is considered as in the nature of an insurer against loss by fire, unless it be caused by lightning. Hutchinson on Carriers, 182. The civil law does not go to this extent, but it does require the carrier to prove the precise cause of the fire, that it was impossible for human prudence to foresee or prevent the loss, and that no act of imprudence or negligence is chargeable to the carrier.
In the case at bar the origin or cause of the fire was not shown. While on the platform in course of delivery, fire suddenly broke out in the cotton. The cause of the fire was either unknown or unexplained. Evidence that the defendant company had a watchman present, that the cotton Was covered with tarpaulins, and that its locomotives had spark arresters, will not suffice to prove that the loss was the result of “an accidental and uncontrollable event.” Unless the court is informed as to the particular cause or origin of the fire, it cannot determine the nature and character of the event. Where the cause of the fire is unknown or unexplained, there is no proof of loss by an event which could not be prevented or resisted.
Both courts decided the case on the theory that loss by fire was not within the limitations and exceptions of the bills of lading. This must be so, as “fire” was stricken out, both as an excepted risk and cause of loss or damage, before the bills were issued.'
It is therefore ordered, adjudged, and decreed that the judgment.of the Court of Appeal and of the district court herein rendered be annulled, avoided, and reversed, and it is now ordered and decreed that plaintiffs do have and recover of the defendant company the sum of $140.24, with legal interest thereon from judicial demand, and costs of suit in all courts.
On Rehearing.
PER CURIAM. Rehearing denied.
See dissenting opinion of BREAUX, C. J., 38 South. 876.