PROVOSTY, J.
This suit is on bills of lading issued by the defendant company for the transportation of certain bales of cotton from Houston, Miss., to New Orleans. The defenses are that the bills of lading were issued in anticipation of the cotton being delivered for carriage, and that before delivery could be made the cotton was destroyed by fire in compress; and that, if delivery in the compress can be considered to have been delivery to defendant as carrier, still defendant is not liable because of a clause in the bill of lading exempting the defendant from liability in the event of the destruction of the cotton by fife.
Finding the latter defense to .be good, we spare ourselves the discussion of the first, the facts in connection with which will be found stated by the Supreme Court of Mississippi in the case of Hill v. Same Defendant, 117 Miss. 548, 78 South. 187, which was a suit for the value of other cotton destroyed by the same fire.
[1] Plaintiffs contend that the so-called Carmack Amendment (Act June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 U. S.’ Stat. at Large, p. 595 [U. S. Comp. St. §§ 8604a, 8604aa]) is preclusive of such a fire risk clause; but the contention is not well founded. 10 C. J. 136.
[2] A printed form was' used for the bills of lading sued on; the freight rate, etc., being added in blanks left for that purpose. The form is on one side of a sheet of paper at the top of which appears the following:
“Note. — The rate named herein is a reduced rate, given in consideration of the shipper entering into the contract set out below. If the shipper prefers that the shipment shall be transported at carrier’s risk, limited only as provided by common law and the laws of the United States and of the several states in so far as they apply, he can accomplish that result by notifying the carrier’s agent, and shipping at a rate 20 per cent, higher than the, rate indicated herein (with a minimum increase of one per cent, per hundred pounds).”
The station agent at Houston testified, however, that for through shipments from Houston he never knew of but the one rate named in the bill; and question is raised as to whether, under these circumstances, the special clause for exemption from fire risk can be considered to have had a reduced rate consideration.
There is no evidence to show that the higher rate mentioned in the said note at the head of the bills could not have been secured by the shippers of this cotton if they had desired to have it. They were business men accustomed to shipping at that point, presumably familar with the conditions of the contract they were entering into. Parties as a rule should be held to the terms of the con *153 tract they have accepted. Therefore we think that the more sensible view to take of a situation like the one presented here is that adopted by the Supreme Court of the United States in Cau v. Texas & Pacific R. R. Co., 194 U. S. 431, 24 Sup. Ct. 664, 48 L. Ed. 1057, where the court said:
“The consideration expressed in the bill of lading was sufficient to support its stipulations. This effect is not averted by showing that the defendant had only one rate. It was the rate also of all other roads, and presumably it was adopted and offered to shippers in view of the limitation of the common-law liability of the roads.”
[3, 4] No evidence was offered to show that the fire was due to the negligence of the defendant, and none was offered to the contrary ; and the plaintiffs contend that the burden of proof was on the defendant to show absence of negligence.
In Price v. Ship Uriel, 10 La. Ann. 413, this court said:
“If the evidence had * • • established the injury to have been occasioned by one of the perils excepted in the bill of lading, it would then have devolved upon the shippers to show that the defendants were guilty of negligence.”
In Thomas v. The Morning Glory, 13 La. Ann, 270, 71 Am. Dec. 509, this court said:
"The clause in the bill of lading limiting the responsibility of the carrier is not to be understood as having exempted him from liability for leakage occasioned by the * * * negligence of himself or his agent, but as throwing upon the bailor the burden of proof of such * * * negligence.”
To the same effect, N. O. Mut. Ins. Co. v. N. O. J. & G. N. R. R. Co., 20 La. Ann. 302; Kelham v. The Kensington. 24 La. Ann. 100.
This is the rule of the United States Supreme Court. Cau v. Texas & Pacific R. R. Co., 194 U. S. 427, 24 Sup. Ct. 663, 48 L. Ed. 1057.
“The weight of authority is that, where the bill of lading exempts for loss by fire, the shipper has the burden of proof to establish that the fire was caused by the negligence of the carrier.” Note, L. R. A. 1915D, p. 656.
The Louisiana cases are very accurately reviewed in this note at page 669.
Of the case of Lehman v. Morgan’s R. R., 115 La. 2, 38 South. 873, 70 L. R. A. 562, 112, Am. St. Rep. 259, 5 Ann. Cas. 818, relied upon by plaintiffs, suffice it to say that the fire exemption clause had been stricken out of the bill of lading involved in it; and that consequently it bears no analogy to the present case.
National Rice & Milling Co. v. N. O. & N. E. R. Co., 132 La. 615, 61 South. 708, Ann. Cas. 1914D, 1099, is also not in point, as the case turned, not upon the question of burden of proof, but upon the question of whether on the facts as established by the evidence there was negligence. The court said:
“Prom all this evidence we are led to the inference, which we think is positive, that-there was negligence.”
After the court had gone fully into the facts on the question of negligence, and found positively on the facts that there had been negligence, the question of burden of proof became merely academic.
The risk of fire having been excepted, and the loss having been by fire, and no negligence bn the part of the defendant company having been shown, the defendant company is not liable.
The judgment appealed from is therefore set aside, and the suit is dismissed, at plaintiff’s cost.