(86 South. 649)

No. 24096.

**McHENRY HORSE EXCHANGE v. ILLI-NOIS CENT. R. CO. et al.**

In re PAYNE, Director General of Railroads.

(Nov. 3, 1920. Rehearing Denied Nov. 29, 1920.)

*(Syllabus by Editorial Staff.)*

Carriers ⬤228(2)—Shipper must prove carrier's negligence under bill of lading, exempting, from liability for death of stock unless caused by railroad's negligence.

Civ. Code, art. 2754, making carriers liable for loss or injury unless caused by accidental or uncontrollable events, does not render a railroad liable for death of a horse in transit because it fails to show the cause of death, where the horse is carried under bill of lading providing that railroad should not be liable for death unless caused by its negligence, as to which there was no evidence.

Provosty, J., dissenting.

Action by the McHenry Horse Exchange against the Illinois Central Railroad Company and another. A judgment for defendant was set aside, and judgment for plaintiff entered by Court of Appeal. John Barton Payne, Director General of Railroads, applies for certiorari or writ of review. Judgment of Court of Appeal set aside, and judgment for defendant reinstated.

Lemle & Lemle, of New Orleans (W. S. Horton and R. V. Fletcher, both of Chicago, Ill., and Hunter C. Leake, of New Orleans, of counsel), for applicant.

Bernard Titche, of New Orleans, for respondent.

SOMMERVILLE, J. The defendant railroad company complains of a final judgment of the Court of Appeal for the Parish of Orleans condemning it to pay $90 for the loss of a mare, which the plaintiff alleges "was lost or wrongly carried in transit, and never had been delivered to petitioner, notwithstanding amicable demand," in coming from St. Louis to New Orleans. The mare was in a lot of 22 horses shipped at one time in the same car. Twenty-one of these horses were delivered to plaintiff in good order and condition. The mare was found dead in the car while the train was en route through the state of Mississippi.

The suit appears to have been brought under the provisions of article 2754, Civil Code, which reads:

"Carriers and watermen are liable for the loss or damage of the things intrusted to their care, unless they can prove that such loss or damage has been occasioned by accidental and uncontrollable events."

The proof referred to in the article, being negative in its nature, is very difficult to administer; and it has been generally held that where carriers have shown due diligence and care, and no carelessness or fault on their part has been shown, that the required proof has been administered.

Defendant answered that the death of the mare was without fault of the railroad, that the company was in no way responsible therefor; and, in a supplemental answer, that the contract between the parties evidenced by the bill of lading found in the record, provided:

"The railroad company shall not be liable for delay in transit or for the loss or death or injuries to the live stock unless the same is caused by the negligence of the railroad company, its agents or employees."

The statement of facts found by the Court of Appeal is embraced in their opinion, and is as follows:

"On February 14, 1918, there was shipped from the National Stockyards, East St. Louis, Ill., 22 horses, to be transported over the Illinois Central Railroad, then in the control of and operated by the government of the United States by its Director General of Railroads, to New Orleans, La. The 22 horses were loaded at East St. Louis, Ill., in good order in car M. & O. 4591, and 21 were delivered in New Orleans to plaintiff, the McHenry Horse Exchange, from the same car. The 22 horses

were unloaded at Jackson, Miss., to be fed and watered; and at that time all of them were on their feet, and apparently sound and well. They were reloaded on the same day and in the same car, which was a proper car for the transportation of horses, and which was handled in the train next to the caboose, and continued on their journey to New Orleans. Three hours later the train stopped at Crystal Springs, Miss., a station about midway between Jackson and McComb, Miss. The car of horses was examined, and all of the 22 were standing on their feet, and apparently sound and in good health. When the train stopped at McComb, a station about 53 miles from Crystal Springs, on the same day, the car containing the 22 horses was again examined, and 1 was found dead, and the remaining 21 in the car were all standing and apparently in a sound and healthy condition and uninjured. The car in which the horses were carried from Jackson to Crystal Springs and from Crystal Springs to McComb received no rough or unusual handling, and was not in any accident. There was no evidence showing negligence on the part of defendant, except that the usual time for carrying live stock from St. Louis to New Orleans is about three days, while in this case the time was six days from February 14th to 20th.

"On the above and foregoing facts the court rendered judgment in favor of plaintiff, McHenry Horse Exchange, and against the defendant, Illinois Central Railroad Company et al., on the principle or rule laid down in Lehman, Stern & Co., Ltd., v. Railroad Co., 115 La. 1, 38 South. 873, 70 L. R. A. 562, 112 Am. St. Rep. 259, 5 Ann. Cas. 818, as the railroad company failed to introduce proof showing what caused the death of the horse, and in the case of J. D. Simms & Sons v. New Orleans & Northeastern R. R. Co., 5 Court of Appeal, Parish of Orleans, 137.

"In other words, this court applied to this case the provisions of article 2754 (2725) R. C. C., which reads as follows: * * *

"The Supreme Court of this state does not refer to this article in deciding Schoenfeld v. L. & N. R. Co., 49 La. Ann. 907, 21 South. 592. This decision is not in accord with article 2754, unless this article does not apply to 'live freight.' Where the law makes no distinction the court can make none."

The Court of Appeal in its decision makes no reference whatever to the written limitation of the railroad company, which is contained in the bill of lading, and which reads in part as follows:

"The railroad company shall not be liable for delay in transit or for the loss or death or injuries to the live stock unless the same is caused by the negligence of the railroad company, its agents or employees."

Such limitations are not uncommon in bills of lading. They are valid, and have been recognized as binding on the parties by this court on several occasions. It has not been held that a carrier might restrict its liability for damages due to its own carelessness or to the unskillfulness of its crew.

In the case of Roberts v. Riley, 15 La. Ann. 103, 77 Am. Dec. 183, there are several citations of authorities in support of the point.

In Insurance Co. v. Railroad Co., 20 La. Ann. 302, the court said:

"The carrier, notwithstanding a special agreement, is bound to ordinary diligence."

In the case of Darrall v. Southern Pacific Co., 47 La. Ann. 1455, 17 South. 884, the court say:

"Our Code does not impose on carriers the responsibility incident to the relation under the common law. Civil Code, arts. 2751, 2794. * * * But we do not understand that the Code has any tendency to relieve the carrier, if the loss is due to his act. * * * On this same line of defense we are referred to the stipulation in the bill of lading furnished by the carrier to plaintiff. That the carrier may, under certain restrictions, modify his liability, is undoubted. It is hardly necessary to go into that discussion. * * * But it is presumed it will be accepted [that] no stipulation will avail against a loss due to the negligence or imprudence of the carrier, or, in other words, he cannot stipulate against a peril produced by himself."

And in the case of Maxwell & Putnam v. Railroad Co., 48 La. Ann. 385, 19 South. 287, wherein was involved loss of cotton by fire, and there was a bill of lading which put limitations on the carrier for loss by fire, the court say:

"The force and effect of the law, as modified by the contract, is fully alleged on the one hand and admitted on the other. The loss and resulting damage being admitted, the defendant carries the burden of proving that the loss was 'not due to the company's negligence,' or to any 'omission of duty,' in 'any manner causing or contributing' thereto."

And there was judgment in favor of the plaintiff because of the failure of defendant to preserve and deliver the cotton intrusted to its care, which was lost through its negligence or want of due care, notwithstanding it was exonerated ex contractu from loss occasioned by fire.

The case of J. D. Simm's & Sons v. New Orleans & Northeastern R. Co., 122 La. 268, 47 South. 602, is very similar to the case at bar; and the language used in the decision might be adopted in disposing of this case. There the decision of the Court of Appeal was on review and the case was disposed of by the Court of Appeal under the provisions of article 2754, C. C.; and, as was done in this case, the limitation of liability on the railroad company in the bill of lading was disregarded in deciding the case. The court say:

"The Court of Appeal held that the doctrine of the Lehman-Stern Case, supra, applied not only to dead freight, such as cotton, but to live freight, such as mules, and that, as the defendant company had failed to prove the precise cause of the loss of the mule, it was responsible for the value of the same as fixed by the stipulation in the bill of lading.

"The waivers set forth in the bill of lading are not referred to in the opinion of the Court of Appeal, and counsel for the defendant contend that these waivers have an important bearing on the determination of this case. * * *

"The petition alleges that by the 'gross negligence and lack of care on the part of the said railroad company, its agents and employees, in the handling of said car between Meridian, Miss., and New Orleans, La., a certain bay mare mule, of the value of $235, loaded in said car, was jammed, mashed, and injured to such an extent that said mule arrived in New Orleans bleeding from the lungs, and died after being unloaded,' etc.

"Plaintiffs failed to prove the allegations of their petition as to the negligence of the defendant or as to the cause of the injury. The affirmative undisputed evidence is that the train and car were properly handled by the employees of the defendant company. * * *

"The Court of Appeal held the defendant is liable because the company failed to prove the precise cause of the injury, citing the Lehman, Stern & Co. Case, supra. In that case there was no waiver of the statutory liability of the common carrier for the destruction of the cotton by fire. In the absence of evidence showing the origin of the fire, the court held that it was not shown that the loss of the cotton was occasioned by 'an accidental and uncontrollable event,' in the sense of article 2754, Rev. Civ. Code.

"In the case at bar there is no question of a fortuitous event, but the inquiry is whether the damage complained of falls within any of the excepted risks. The nature and cause of the injury to the animal is alleged in the petition, and the plaintiffs seek to hold the defendant liable on the ground of negligence in the handling of the car. The affirmative uncontradicted evidence shows that the car was properly handled by the defendant, and the plaintiffs have failed to prove that the mule was jammed and mashed as alleged. * * *

"As the waiver covers all risks incidental to the transportation of a carload of mules, proof of the nonnegligence of the carrier seems to us to be a sufficient defense. Under the waiver, the shipment was at the shipper's risk, barring the negligence of the carrier.

"The precise cause of the injury is immaterial, if it did not result from the negligence of the carrier. Our learned Brothers of the Court of Appeal did not consider the legal effect of the * * * waiver, which exempted the carrier from all damages not caused by the negligence of the company. This was error."

This case will be disposed of in the same way. The contractual limitation entered into between the parties relieved the railroad company from the loss of the death of live stock unless the same was caused by negligence on the part of the railroad company, its agents or employees.

It is therefore ordered, adjudged, and decreed that the judgment of the Court of Appeal be set aside, and that the judgment of the First city court for the parish of Orleans be reinstated and made the judgment in the

cause   Costs to be paid by respondent, McHenry Horse Exchange.

PROVOSTY, J., dissents.